**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**Mary K. Immel,**

    **Plaintiff,**

**-v-**                                                                        **Case No.: 2:07-cv-1214
Judge Smith
Magistrate Judge King**

**Douglas E. Lumpkin, in his official capacity
as Director of the Franklin County
Department of Job and Family Services,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff Mary K. Immel initiated this action against Defendant Douglas E. Lumpkin, in his official capacity as Director of the Franklin County Department of Job and Family Services, alleging that Defendant interpreted state regulations in a manner that is unconstitutional and conflicts with federal law. This matter is before the Court on Plaintiff and Defendant's Cross-Motions for Summary Judgment (Docs. 10 and 14). Memorandums in Opposition and Reply briefs have been filed and this matter is now ripe for review. For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### I. BACKGROUND

Plaintiff, Mary K. Immel, is an 88 year old resident of Worthington Christian Nursing Facility located in Columbus, Ohio. Plaintiff's residency at Worthington Christian began in March of 2006.

On January 17, 2007, Plaintiff purchased a promissory note from the Immel Family, LLC, an Ohio limited liability company, for $194,000.00 payable to Plaintiff in monthly installments of $5,496.03. These monthly payments began February 1, 2007 and are to continue for a thirty-seven month period. On February 2, 2007, Plaintiff gifted a total of $191,268.00 to her two children.

At the time of the promissory note purchase, Plaintiff's life expectancy, in accordance with the actuarial publications of the office of the chief actuary in 26 C.F.R. 20.2031-7, was 5.14 years. The promissory note was purchased in connection with a gift as was anticipated by the federal statutory scheme set forth in 42 U.S.C. § 1396p. The terms of the promissory note provide in pertinent part:

> **NON ASSIGNABILITY AND NO PREPAYMENT**
>
> Neither party may assign the Note and neither party may make or demand prepayment of the Note.
>
> **COMPLIANCE WITH 42 U.S.C. 1396P(c)(1)(I) and O.A.C. 5101:1-39-27.3 et seq.**
>
> At all times, the terms and conditions of this note shall comply with 42 U.S.C. 1396p(c)(1)(I) and O.A.C. 5101:1-39-27.3 et seq., including but not limited to the following conditions:
>
> (A) TERM    The repayment term shall be actuarially sound as determined in accordance with actuarial publications of the Office of the Chief Actuary of the Social Security Administration, a copy of which is attached hereto and incorporated fully herein as exhibit A;
>
> (B) PAYMENTS    All payments are to be made in equal amounts during the term of the loan, with no deferral and no balloon payments; and
>
> (C) DEATH OF LENDER    The note shall not cancel the balance

upon the death of the lender.

On February 26, 2007, Plaintiff filed a Medicaid application with the Franklin County Department of Job and Family Services ("FCDJFS") seeking determination of a restricted period of Medicaid coverage based upon the above mentioned gift. At the time of the application, Plaintiff had outstanding medical bills due to Worthington Christian. FCDJFS' initial response to Plaintiff's Medicaid application was an Application Follow-up Letter dated March 15, 2007, stating that Plaintiff's promissory note was considered an improper transfer. One month later, on April 18, 2007, FCDJFS denied Plaintiff's Medicaid application based on "failure to meet spenddown."

In response to the denial, Plaintiff requested a state hearing with the Ohio Department of Job and Family Services Bureau of State Hearings (the "Bureau"). A state hearing was held on August 10, 2007 and the Bureau issued a State Hearing Decision that overturned the denial. The State Hearing Decision included the following findings of fact:

\* \* \*
4. On 2/7/07, the Appellant gifted $95,634 each to two children, for a total gift of $191,268.
5. The Appellant's representative does not dispute that the 2/7/07 gift constitutes an improper transfer.
6. On 1/17/07, the Appellant executed a promissory note for $194,000.
7. The promissory note has a repayment term that is actuarially sound.
8. The promissory note provides for payments in equal amounts during the term of the note, with no deferral or balloon payments made. The note requires monthly payments of $5496.03, not to exceed 37 payments.
9. The promissory note prohibits the cancellation of the balance upon the lender's death.
\* \* \*
12. By manual notice mailed 4/18/07, the Agency denied the 3/8/07 [sic, 2/26/07] application for Medicaid due to failure to meet

3

> spenddown. By notice generated from the automated eligibility system and mailed 4/18/07, the Agency denied Medicaid for the aged due to ineligibility for vendor pay as a result of improper resource transfer and failure to meet spenddown.

The State Hearing Officer recommended that the appeal be sustained with compliance ordered. Specifically, "The Agency is directed to deny Medicaid vendor pay and establish a period of restricted coverage based on the $191,268 improperly transferred by the Appellant on 2/7/07. The Agency shall not consider the promissory note executed on 1/17/07 to be an improper transfer." The Bureau then adopted the State Hearing Officer's recommendations and ordered compliance with that decision.

On August 27, 2007, the FCDJFS issued a "Notice of Denial of Your Application for Assistance" to Plaintiff, citing as the basis "resources in excess of the $1,500 Medicaid resource limit. The notice further provided, "[a]s a result of improper transfers, nursing home vendor payment is denied and a period of restricted coverage was calculated $191,267.97 / $5247.00 = 36.45 months. The period of restricted coverage will begin when the Appellant is both in a nursing home and Medicaid eligible. On August 28, 2007, the FCDJFS issued an automated denial notice, DHS 8500, again stating Plaintiff is not eligible for Medicaid for two reasons: "Not eligible for vendor payment, improper resource transfer" and "Value of resources exceeds program eligibility limits." This is the first time the resources in excess of program eligibility limits was raised. It was not addressed in the previous denial, nor the hearing.

In response to the second denial, Plaintiff requested a second state hearing with the Bureau. The second hearing was held on December 27, 2007. At the hearing, the FCDJFS admitted that there were no changes of fact or law subsequent to the first hearing, but that FCDJFS had developed new theories with respect to Plaintiff's application. The Bureau issued

4

its second decision on January 25, 2008, which again sustained Plaintiff's appeal. The State Hearing Officer then overruled the FCDJFS' denial of Medicaid and directed the FCDJFS to reconsider Plaintiff's original Medicaid application of February 2007. On February 12, 2008, Plaintiff received a third notice of denial from the FCDJFS. This third denial was based on "resources in excess of the $1,500.00 Medicaid resource limit" and "total monthly income in 2/07, $6,846.00, exceeds the Medicaid need standard of $543.00." Ohio administrative procedure permits Plaintiff to request another state hearing following this denial, yet Plaintiff asserts that requesting such a hearing would be to no avail.

Plaintiff initiated this case on November 27, 2007, while the administrative proceedings were still ongoing. Plaintiff is seeking declaratory relief for the denial of Medicaid benefits which she argues is in contravention of 42 U.S.C. § 1396.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party

---

[1] *Reeves* involved a motion judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

"cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

Both Plaintiff and Defendant have moved for summary judgment. Plaintiff asserts that Defendant incorrectly interpreted O.A.C. § 5101:1-39-27.3(C) and (F) in a manner that conflicts with 42 U.S.C. §1396p(c) and that doing so violates the Supremacy Clause of the United States Constitution. Defendant, on the other hand, argues that this issue has been rendered moot. Defendant concedes that Plaintiff's Medicaid original application should not have been denied on the basis of the promissory note being considered an available resource. Plaintiff appealed that denial to the state agency and prevailed. While Defendant did again deny her application, it was for other reasons, specifically that Plaintiff was over income. Therefore, Defendant argues that the Court should abstain from deciding this case pursuant to the *Rooker-Feldman* doctrine.

Defendant also asserts a number of alternative grounds for why the Court should abstain

from deciding this case, including *Pullman* abstention, *Burford* abstention and the *Younger* abstention doctrine. Defendant also asserts that he should prevail on the merits of the case, but the Court finds the aforementioned to be dispositive and therefore does not need to address the remaining arguments.

**A.** *Rooker-Feldman* **Doctrine**

Defendant argues that Plaintiff's Complaint in this case rests on the Supremacy Clause. Plaintiff asserts that there is a conflict between federal and state rules. However, that is no longer the case. Plaintiff's entire Complaint centers around the initial denial of her Medicaid application. However, the State Hearing Officer's Decision clearly found the promissory note to be an unavailable resource for purposes of eligibility. Further, Defendant concedes that his initial interpretation of the Ohio Rules regarding the consideration of promissory notes as available resources was in error. Defendant has not acted contrary to the State Hearing Officer's Decision, which is in accord with Plaintiff's interpretation of the Ohio Administrative Code. Defendant was directed to review Plaintiff's eligibility, but at no time was Defendant directed to declare Plaintiff eligible to receive Medicaid benefits. There is no question that the subsequent denials of Plaintiff's Medicaid application were for reasons completely unrelated to the promissory note. Plaintiff, however, has not raised any federal claims with respect the subsequent denials. Defendant asserts that the reason Plaintiff has been continually denied Medicaid benefits is because she is ineligible. This action, without the preemption issue, is nothing more than an attempt by Plaintiff to appeal the decision of a state agency. Defendant therefore argues that the *Rooker-Feldman* doctrine precludes jurisdiction under the aforementioned circumstances.

The *Rooker-Feldman* doctrine is designed to safeguard "our dual system of government from federal judicial erosion." *Squirek v. Law Offices of Sessoms & Rogers, P.A.*, 2003 U.S. Dist. LEXIS 7760 (M.D. N.C. May 5, 2003). It protects the state judicial systems by recognizing that the "independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues." *Id.*, *quoting Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000). Therefore, if a Plaintiff cannot succeed on a federal claim without requiring a district court to re-examine issues already decided by a state court, the district court cannot exercise subject matter jurisdiction.

The *Rooker-Feldman* doctrine originates from two Supreme Court decisions, which were rendered 60 years apart. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In both cases, the plaintiffs challenged the validity of state court decisions by filing suit in federal district court. In *Rooker*, the plaintiff asked the district court to render the state court judgment against him "null and void." *See Rooker*, 263 U.S. at 414-15. In *Feldman*, the plaintiffs filed suit against the actual state court that had rejected the plaintiffs' applications to practice law. *Feldman*, 460 U.S. at 478-79. In both cases, the Supreme Court dismissed the suits for lack of subject-matter jurisdiction, reasoning that pursuant to 28 U.S.C. § 1257, only the Supreme Court, and not the lower federal courts, enjoys appellate jurisdiction over state court decisions. *See Rooker*, 263 U.S. at 414-15; *Feldman*, 460 U.S. at 478-79. Significantly, the *Feldman* Court reasoned that the plaintiffs could challenge the state rules themselves in federal court on constitutional grounds; such a challenge would not be asking the district court to exercise appellate authority over a state court, but normal preclusion

9

rules would still apply. *Id.* at 487-88; *see also Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435-36 (6th Cir 2006) (discussing the Supreme Court's analysis in the *Rooker* and *Feldman* cases more extensively). The source of the plaintiffs' alleged injury, then, was dispositive in *Feldman* on the issue of jurisdiction, a distinction which the Supreme Court reiterated more than 20 years later in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).

Whether the *Rooker-Feldman* doctrine applies involves a two-part inquiry. First, the Court considers whether the federal claim is "inextricably intertwined" with the claim asserted in the earlier state court action. A claim is "inextricably intertwined" if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 756 (6th Cir. 2003), *quoting Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998). Second, the Court considers "whether the federal claim is a 'general challenge to the constitutionality of the state law applied in the state action,' to which the *Rooker-Feldman* doctrine would not apply, or 'a specific grievance that the law was invalidly--even unconstitutionally--applied in the plaintiff's particular case,' that would raise a *Rooker-Feldman* bar." *Id.*

In reviewing Plaintiff's Complaint, the Court finds that Plaintiff's federal claims are inextricably intertwined with claims earlier asserted in state administrative proceedings. Plaintiff's action in this Court essentially seeks to affirm a prior State Hearing Officer Decision. Plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable because she has not lost in state court. Regardless of how Plaintiff characterizes it, she has not been awarded Medicaid benefits

and is essentially a loser for purposes of application of this doctrine. Otherwise, why would Plaintiff even initiate this action? The Court finds that Plaintiff is essentially asking the Court to clarify the August 10, 2007 State Hearing Officer's Decision. To meet Plaintiff's demands and clarify the State Hearing Officer's Decision and state the exact meaning and interpretation of the statute is clearly a direct review of the state administrative proceedings. Further, a review and affirmation of the August 10, 2007 Decision would not render Plaintiff the relief sought as Defendant was merely ordered to review Plaintiff's eligibility, which he has done and issued two subsequent denials for other reasons. At no time was Defendant ordered to declare Plaintiff eligible to receive Medicaid benefits. Therefore, the federal review sought by Plaintiff is clearly barred by the *Rooker-Feldman* doctrine. Accordingly, the *Rooker-Feldman* doctrine prohibits this Court from exercising jurisdiction over this case.

**B.**     ***Res Judicata***

Plaintiff argues that *res judicata* bars Defendant from issuing repeated denials of Plaintiff's Medicaid application. Based on the aforementioned, the Court finds that this is a matter that was raised at the State Hearing and federal review of the State Hearing Decisions and the subsequent Medicaid denials are barred.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

The Clerk shall remove Documents 10 and 14 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

                    */s/ George C. Smith*
                    **GEORGE C. SMITH, JUDGE**
                    **UNITED STATES DISTRICT COURT**